**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| JOSEFINA AVILA PACHECO,<br><br>        Plaintiff,<br>   v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security Administration,<br><br>        Defendant. | No. EDCV 15-2501 AS<br><br>**MEMORANDUM OPINION AND ORDER OF REMAND** |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On January 17, 2012, Plaintiff Josefina Avila Pacheco ("Plaintiff") applied for disability insurance benefits alleging a disabling condition beginning August 25, 2010. (AR 192). On December 3, 2013, Administrative Law Judge ("ALJ") Mark B. Greenberg

examined records and heard testimony from Plaintiff and vocational expert ("V.E.") Carlen Stock. (AR 35-71). On August 7, 2014, the ALJ denied Plaintiff benefits in a written decision. (AR 15-28). The Appeals Council denied review of the ALJ's decision. (AR 1-3).

On December 9, 2015, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 405(g) alleging that the Social Security Administration erred in denying benefits. (Docket Entry No. 1). On April 12, 2016, Defendant filed an Answer to the Complaint, (Docket Entry No. 13), and the Certified Administrative Record ("AR"), (Docket Entry No. 14). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 8, 9). On July 28, 2016, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 17).

**SUMMARY OF ALJ'S DECISION**

The ALJ applied the five-step process in evaluating Plaintiff's case. (AR 16-17). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date. (AR 17). At step two, the ALJ found that Plaintiff's severe impairments included obesity, degenerative disc disease, degenerative joint disease, repetitive use injuries of the right upper extremity, chronic pain, impingement syndrome, cubital tunnel syndrome, carpal tunnel syndrome, and depression. (AR 17). At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 17-18).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following further limitations: "with respect to [Plaintiff's] sitting for six hours out of an eight-hour workday she would require hourly breaks of five minutes to change position, and during that five minutes she could either stand at the workstation or walk around the workstation close enough to remain on task. She can frequently push and pull with the dominant right upper extremity. She can occasionally climb ramps and stairs, stoop, crouch and crawl. She can frequently balance and kneel. She is precluded from climbing ladders, ropes, and scaffolds. She is precluded from exposure to hazards. She is precluded from overhead reaching with the right upper extremity but can otherwise perform frequent reaching, handling, fingering and feeling with the right upper extremity. She is limited to nonpublic work that is unskilled and involves simple and repetitive tasks." (AR 19). In making his RFC finding, the ALJ stated that Plaintiff's subjective complaints were "less than fully credible" and inconsistent with objective medical evidence. (AR 21, 24, 26).

At steps four and five, the ALJ determined that Plaintiff was unable to perform past relevant work but that she could seek work as a packager, inspector, or assembler, which were all jobs existing in significant numbers in the national economy. (See AR 27-28). Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 28).

**STANDARD OF REVIEW**

This court reviews the Administration's decision to determine if the decision is free of legal error and supported by substantial evidence. See Brewes v. Commissioner of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff raises two grounds for relief. First, Plaintiff claims that the ALJ improperly assessed the credibility of her subjective complaints. (Joint Stip. at 3-7). Second, Plaintiff claims that the ALJ erred at step five by selecting alternative occupations that Plaintiff is not able to perform and relying on an inaccurate calculation of the numbers of positions in these alternative occupations available in the national economy. (Id. at 13-17).

**DISCUSSION**

After reviewing the record, the Court finds that Plaintiff's first claim warrants remand for further consideration. The Court declines to address Plaintiff's other claim.

**A. The ALJ Erred In Rejecting Plaintiff's Subjective Complaints**

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of his subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 806 F.3d 487, 492-93 (9th Cir. 2015) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)). In this case, because there is no evidence of malingering, the "clear and convincing reasons" standard applies.

During the hearing, Plaintiff testified that she had last worked in August 2010. (AR 42). Plaintiff noted that she had surgery on her right shoulder and right elbow and that doctors had recommended surgery on her right hand. (AR 44-45). Plaintiff stated that she did not want to undergo another operation because she did not believe

that previous surgeries had helped her. (AR 45). Plaintiff also noted that she had epidural injections in her back and neck, but those had not helped either. (AR 45). Plaintiff testified that she was unable to use her right hand to grip, pick up small things or button a shirt "quickly" or "for a long time," or lift a gallon of milk. (AR 45-46). Plaintiff further testified that she had also tried physical therapy, unspecified "pain management," and acupuncture. (AR 46-47).

Plaintiff stated that she could walk for about an hour at a time, although she sometimes fell down, and she had memory and concentration problems. (AR 47). Plaintiff testified that she would be unable to work a job where she would have to sit or stand for a long time, and she sometimes needed to lie down for thirty to sixty minutes due to her pain. (AR 48). Plaintiff also stated that she would be unable to perform full time work that involved moving her right hand repetitively. (See AR 48). Plaintiff further testified that, with assistance, she could shop at a nearby store and perform household chores. (AR 49).

Several portions of the administrative record are also relevant to Plaintiff's claim that the ALJ erroneously rejected her pain testimony. During a February 2011 orthopedic re-evaluation, Plaintiff reported that "her last injection" in January 2011 had been "of some help," although she was still experiencing "severe" shoulder, neck, and back pain that caused difficulty sleeping. (AR 321). During a March 2011 postoperative evaluation, Plaintiff reported that pain in her right shoulder had decreased in the week

following her surgery on that shoulder. (AR 327). During an April 2011 postoperative evaluation, Plaintiff again reported "improving right shoulder pain, status-post arthroscopic repair of her right shoulder as of 3/1/11." (AR 330). Plaintiff still reported chronic cervical and lumbar spine pain. (AR 330).

In November 2011 and April 2012, Plaintiff underwent physical examinations, and her grip strength in her right hand improved during this period. (Compare AR 339 (testing at "5, 5, 5 pounds" in November 2011) with AR 695 (testing at "20, 20, 15 pounds" in April 2012)).

In an April 2012 Adult Function Report, Plaintiff reported that she was unable to sleep because of her pain and that she had difficulty bathing and grooming herself due to pain. (AR 221). Plaintiff stated that family members helped her with grooming, housework, and preparing meals. (AR 222). Plaintiff claimed that she left the house once or twice a day to pick up her son from school and visited with friends once or twice a week. (AR 223-24). Plaintiff reported that she could walk for up to thirty minutes before needing to rest for fifteen minutes and that her ailments also affected her ability to lift, stand, squat, bend, stand, reach, kneel, climb stairs, concentrate, understand, follow instructions, and use her hands. (AR 225). A December 2012 Adult Function Report made substantially similar allegations. (AR 258-66).

In an October 2012 Progress Note, Dr. Joseph Fujun Liu observed that Plaintiff reported "improved mood and sleeping" but also "a lot

7

of anxiety" and that her mood during the examination was "stable and cooperative." (AR 610). Dr. Liu recommended increasing Plaintiff's Buspar dosage and otherwise did not modify Plaintiff's course of treatment. (AR 611).

In a November 2012 Progress Report, Dr. Nelson J. Flores observed that Plaintiff's mood had improved with the use of psychotropic medication, although she was anxious, irritable, and suffered from heart palpitations. (AR 423). Dr. Flores recommended no changes to Plaintiff's treatment regimen. (AR 424).

In a second November 2012 Progress Note, Dr. Liu observed that Plaintiff reported improved sleep and mood due to her medication regimen but still reported anxiety. (AR 420). Dr. Liu reported that Plaintiff's mood was "stable [and] cooperative" and recommended increasing her Buspar dosage. (AR 420-21).

In a December 2012 Progress Note, Dr. Liu observed that Plaintiff reported "a lot of crying" and "depressed mood," although her mood during the examination was stable and cooperative. (AR 613). Dr. Liu recommended increasing Plaintiff's Wellbutrin and Remeron dosages but otherwise did not modify Plaintiff's course of treatment. (AR 613-14).

In a January 2013 Progress Note, Dr. Liu reported that Plaintiff felt "better" following the increase of her Wellbutrin dosage and was "cooperative and engaged" during the examination. (AR 619). Dr. Liu did not modify Plaintiff's treatment regimen. (AR 620).

The ALJ summarized Plaintiff's testimony and the aforementioned evidence, determining that: (1) Plaintiff had "some improvement" in her grip and motor strength following surgery on her right upper extremity; (2) no doctor had recommended surgery for Plaintiff's degenerative disc disease of the lumbar and cervical spine; (3) Plaintiff had not been treated for physical impairments after 2013; (4) Plaintiff's treatment for her depression had generally been successful, requiring "very little treatment" after February 2013, and her mood disorder was "stable" since October 2012; (5) Plaintiff had never been psychiatrically hospitalized; and (6) Plaintiff had received "routine, conservative, and non-emergency treatment" since the alleged onset date. (AR 19-21). The ALJ then summarized additional medical evidence and assessments, opining that "[t]he medical evidence of record suggests that [Plaintiff's] impairments are not as limiting as alleged by [Plaintiff]." (AR 21-26; see also id. at 24 ("The [ALJ] finds that objective clinical findings and the treatment record do not support [Plaintiff's] allegations of disabling symptoms and limitations; thus, [Plaintiff's] allegations are not fully credible.")). Following these summaries, the ALJ concluded that his RFC assessment was "supported by the evidence as a whole" and that Plaintiff's complaints were "less than fully credible and the objective medical evidence [did] not support the alleged severity of symptoms." (AR 26).

Remand is warranted. Preliminarily, the ALJ's summary of Plaintiff's testimony, summary of the medical evidence, assignment of weight to medical assessments, and ruling on Plaintiff's credibility are intermingled over several pages. (AR 19-26). Although the ALJ

intersperses references to facts or conclusions that might be relevant to assessing Plaintiff's credibility, e.g., her treatment regimen and improvement with treatment, the ALJ's clearest findings regarding Plaintiff's credibility were that her complaints were inconsistent with the medical evidence of record, the "clinical findings," and the "treatment record." (AR 21, 24). Lack of objective medical support cannot be the sole basis for finding a claimant not credible, and the ALJ's other reasons are not presented with the degree of specificity required by case law. See Burrell v. Colvin, 775 F.3d 1133, 1138-39 (9th Cir. 2014); Brown-Hunter, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("lack of medical evidence" can be "a factor" in rejecting credibility, but cannot "form the sole basis").

Moreover, to the extent that the Court can identify the ALJ's other reasons for discrediting Plaintiff's testimony, these reasons are suspect. For example, the ALJ referenced Plaintiff's testimony and Adult Function Report and concluded that her "daily activities . . . do not comport with additional limitations beyond those found herein." (AR 20). Having reviewed Plaintiff's testimony and the administrative record, the Court is unconvinced that Plaintiff's daily activities are consistent with the ability to perform full time work or inconsistent with her excess pain testimony. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (finding "only a scintilla" of evidence supporting ALJ's adverse credibility finding

where claimant was able to go grocery shopping with assistance, walk approximately an hour in the mall, get together with friends, play cards, swim, watch television, read, undergo physical therapy, and exercise at home); see also Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (activities of daily living affect a claimant's credibility "[o]nly if the level of activity [is] inconsistent with [the claimant's] claimed limitations"; ALJ erred by "not fully accounting for the context of materials or all parts of the testimony and reports," resulting in paraphrasing of record material that was "not entirely accurate regarding the content or tone of the record").

Moreover, according to the ALJ, "[t]he treatment records reveal [that Plaintiff] received routine, conservative, and non-emergency treatment since the alleged onset date," (AR 21), and the ALJ also noted that no physician had recommended surgery for Plaintiff's degenerative disc disease and that Plaintiff had never been psychiatrically hospitalized. (AR 20). However, Plaintiff underwent hospitalization and surgery for several conditions *after* the alleged onset date, and the Ninth Circuit has expressed doubt as to whether a treatment regimen including epidural steroid injections qualifies as "conservative." See Garrison, 759 F.3d at 1015 n.20; (see also AR 45, 318, 321 (Plaintiff received epidural steroid injections)).

Relatedly, to the extent that the ALJ discredited Plaintiff's testimony because she did not seek surgery or other specific treatments, the ALJ was required, and failed, to consider Plaintiff's explanation for not doing so. See Smolen, 80 F.3d at 1284 ("Where a claimant provides evidence of a good reason for not taking medication

for her symptoms, her symptom testimony cannot be rejected for not doing so."); Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (unexplained or inadequately explained failure to seek treatment or follow prescribed course of treatment can support adverse credibility finding). Here, Plaintiff reported in 2013 that she was reluctant to undergo further surgery because she did not believe her prior surgeries had provided meaningful pain relief, (AR 45), which is consistent with Plaintiff's reports of "decreased" or "improving" pain one month or less after surgery in March 2011. (AR 327, 330). In any event, even a brief pain-free period or temporary improvement is consistent with a claim of disability. See Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability.").

In light of the foregoing, the Court concludes that the ALJ provided insufficient support for his decision to discount Plaintiff's pain testimony.

**B. The Court Cannot Conclude That The ALJ's Error Was Harmless**

"[H]armless error principles apply in the Social Security . . . context." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006)). Generally, "an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Id. (citing Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)).

The Court cannot conclude that the ALJ's errors were harmless. The limiting effects of Plaintiff's pain are directly relevant to assessing her RFC. A claimant's RFC "may be the most critical finding contributing to the final . . . decision about disability." See McCawley v. Astrue, 423 F. App'x 687, 689 (9th Cir. 2011) (quoting SSR 96–5p). Here, Plaintiff's RFC was central to the ALJ's determination that there was work that she could perform despite her limitations. (AR 27-28). Because the Court cannot determine that the ALJ's errors were "inconsequential to the ultimate nondisability determination," the errors cannot be deemed harmless. See Carmickle, 533 F.3d at 1162.

**C. Remand Is Warranted**

The decision whether to remand or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record is fully developed, it is appropriate to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

Here, the Court remands because the ALJ provided insufficient support for his decision to discount Plaintiff's pain testimony. The record does not affirmatively establish that the ALJ could not have

found Plaintiff not fully credible for other reasons, nor does it establish that the ALJ would necessarily be required to find Plaintiff disabled if these deficiencies were remedied. Remand is therefore appropriate.

The Court has not reached issues not discussed supra except to determine that reversal with a directive for the immediate payment of benefits would be inappropriate at this time. In addition to the issues addressed in this order, the ALJ should consider on remand any other issues raised by Plaintiff, if necessary.

**CONCLUSION**

For the foregoing reasons, the decision of the Administrative Law Judge is VACATED, and the matter is REMANDED, without benefits, for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 28, 2017.

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE